86 P.3d 125 (2004)
151 Wash.2d 133
STATE of Washington, Respondent,
v.
Dynamite SALAVEA a/k/a Pale Tuupo, Petitioner.
No. 73642-1.
Supreme Court of Washington, En Banc.
March 11, 2004.
*126 Mary Katherine Young High, Tacoma, for petitioner.
John Martin Neeb, Kathleen Proctor, Tacoma, for respondent.
OWENS, J.
Dynamite Salavea argues that intentional or negligent prosecutorial delay by the State caused him to lose juvenile court jurisdiction, prejudicing his defense on four counts of rape of a child in the first degree and two counts of child molestation in the first degree. Salavea further contends that under the automatic decline statute, RCW 13.04.030, he would not have been automatically declined at the earliest time of proceedings because the age element in the statute refers to age at the time the crime is committed, not the age at the time of the proceedings. In light of previous case law, the plain language of the statute, and the legislative intent, we disagree and hold that age at the time of the proceedings is the controlling age. Based on the nature of the charges and Salavea's age at the earliest possible time of charging, Salavea would have been automatically declined. Therefore, Salavea fails to prove prejudice and his due process rights were not violated by any prosecutorial delay. We affirm the Court of Appeals.

FACTS
Salavea was born on October 9, 1982. Between February 1996 and June 1998, when Salavea was 13-15 years of age, Salavea raped and molested his cousins, R.U.T. and R.K.T. No issue is raised that relates to the facts of the abuse elicited at trial, so the details of the abuse need not be related. In August 1998, an aunt told the boys' mother, Bonnie, that her son had been raped. Bonnie spoke with the boys and then reported the abuse to the police. The juvenile court's prosecutor's office received the investigative file on September 29, 1998. Salavea turned 16 on October 9, 1998. During October and November the prosecutor's office conducted interviews with the children and tried to contact Salavea, but could not find him. Verbatim Report of Proceedings (VRP) (motion to dismiss, May 11, 2001) at 9-12; 4 VRP (trial, June 6, 2001) at 265-70; Clerk's Papers (CP) at 38 (Detective C. Pollard's written report dated Dec. 1, 1998).
On March 8, 1999, the prosecutor's office reviewed the file for charging and transferred the file to the Pierce County Superior Court division pursuant to the automatic decline statute. RCW 13.04.030; CP at 32. Around this same time, Salavea committed a parole violation, a bench warrant was issued based on the violation, and Salavea fled Washington for Utah. At the time Salavea fled, he lost contact with his mother and his *127 family, he knew the bench warrant had been issued, and he knew about the allegations regarding R.U.T. and R.K.T. Salavea returned to Washington in July or August 2000, was picked up for robbery in Tacoma on September 14, 2000, and provided the police with false information. On October 9, 2000, Salavea turned 18.
Salavea was charged and arraigned as an adult on four counts of rape of a child in the first degree and two counts of child molestation in the first degree on October 25, 2000. VRP (arraignment, Oct. 25, 2000) at 3; CP at 3-5; State v. Salavea, 115 Wash.App. 52, 55, 60 P.3d 1230 (2003). In April 2001 Salavea filed a motion to dismiss based on prosecutorial delay. CP at 24. Judge Frederick B. Hayes applied the prosecutorial delay three-prong test and found Salavea had been prejudiced, but denied the motion because the State's reasons for delay were reasonable: the State was thorough in its investigation, Salavea was absent from the jurisdiction, the State knew Salavea had a bench warrant out and delayed charging. VRP (motion to dismiss, May 11, 2001) at 17-19. Salavea was subsequently found guilty by a jury and sentenced. Salavea appealed the decision based on prosecutorial delay and argued that he should have been charged following the police investigation. Br. of Appellant at 15. The Court of Appeals applied the same three-prong test to the facts and concluded that Salavea did not show prejudice from the delay because at the conclusion of the investigation he was 16. Based on Salavea's age and the nature of the crimes committed, RCW 13.04.030(1)(e)(v)(C) prevented juvenile court jurisdiction. The Court of Appeals affirmed the trial court decision because Salavea failed to show prejudice based on loss of juvenile court jurisdiction. Salavea, 115 Wash.App. at 55-57, 60 P.3d 1230. We now affirm the Court of Appeals.

ISSUES
1. Does the age prerequisite in RCW 13.04.030(1)(e)(v) refer to the defendant's age at the time of the proceedings or the defendant's age during the commission of the crime?
2. If RCW 13.04.030(1)(e)(v) does apply to Salavea, did the State violate Salavea's due process rights by intentionally or negligently delaying a charging decision?

ANALYSIS
Due process plays a limited role in protecting defendants against oppressive delay. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).[1] Absent intentional or negligent prosecutorial delay, where a defendant commits a crime before he is 18 but is not charged until after he is 18, there is not a violation of due process. State v. Dixon, 114 Wash.2d 857, 858-59, 792 P.2d 137 (1990) (holding that where a defendant committed the crime at age 16 but was not charged until he was 18, due process was not violated because prosecutorial delay was justified); State v. Calderon, 102 Wash.2d 348, 349, 684 P.2d 1293 (1984). Whether Salavea's due process rights were violated based on prosecutorial delay is a question we review de novo. See State v. Warner, 125 Wash.2d 876, 883, 889 P.2d 479 (1995) (reviewing prosecutorial delay de novo under the error of law standard and finding that circumvention of precedents applying the prosecutorial delay test constituted reversible error).
To decide if there is prosecutorial delay, a court must apply a three-prong test. First, the defendant must show the charging delay caused prejudice. If the defendant shows prejudice, the court then examines the State's reasons for the delay. Finally, the court balances the delay against the defendant's prejudice to decide if the delay violates the "fundamental conceptions of justice." If the delay is intentional, due process is violated, but if the delay only is negligent, due process may or may not be violated. Lovasco, 431 U.S. at 790, 97 S.Ct. 2044; Calderon, 102 Wash.2d at 352-53, 684 P.2d 1293; Dixon, 114 Wash.2d at 860, 865-66, 792 P.2d 137.

*128 A. Prong One: Prejudice

1. Actual Prejudice
Salavea must show the State's delay caused actual prejudice to his defense in order to satisfy prong one of the prosecutorial delay test. State v. Norby, 122 Wash.2d 258, 264, 858 P.2d 210 (1993) (emphasizing that prejudice must be actual, not merely speculative). Salavea argues that his loss of juvenile court jurisdiction fulfills this burden. We have held that offenders fulfill their burden of proof when prosecutorial delay causes a loss of juvenile court jurisdiction because the loss results in a decrease of benefits available to a defendant.[2]Dixon, 114 Wash.2d at 860-61, 792 P.2d 137 (stating that two benefits lost to the defendant are the avoidance of the stigma attached to an adult conviction and the possibility for less harsh penalties); Calderon, 102 Wash.2d at 352-53, 684 P.2d 1293 (stating that loss of juvenile court jurisdiction results in the loss of juvenile adjudication or the opportunity to argue against a decline from juvenile court jurisdiction); State v. Alvin, 109 Wash.2d 602, 604, 746 P.2d 807 (1987).
However, the right to be tried in a juvenile court is not constitutional and the right attaches only if a court is given statutory discretion to assign juvenile or adult court jurisdiction. In re Boot, 130 Wash.2d 553, 570-71, 925 P.2d 964 (1996); Dixon, 114 Wash.2d at 860, 792 P.2d 137; State v. Sharon, 33 Wash.App. 491, 494-95, 655 P.2d 1193 (1982), aff'd, 100 Wash.2d 230, 668 P.2d 584 (1983). Absent statutory discretion to assign jurisdiction, a defendant cannot suffer prejudice because his case was not adjudicated in juvenile court. Whether Salavea can prove loss of juvenile court jurisdiction, then, depends on whether the juvenile court had statutory discretion to assign juvenile court jurisdiction.
We must look to the appropriate statutory interpretation and application of the automatic decline statute, RCW 13.04.030, to determine this issue. The earliest the State could charge and try Salavea was after he turned 16. If the automatic decline statute refers to age at the time of the proceedings, then the court did not have discretion to assign juvenile court jurisdiction at the time of the charging and trial and Salavea cannot fulfill his proof of prejudice.

2. Statutory Interpretation of RCW 13.04.030(1)(e)(v)
Statutory interpretation is a question of law and we review the interpretation of RCW 13.04.030(1)(e)(v) de novo. See State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003). RCW 13.04.030 allows the juvenile court exclusive jurisdiction over juvenile offenses unless certain circumstances arise. Here, we are only concerned with RCW 13.04.030(1)(e)(v). This section automatically transfers jurisdiction to the adult court if "[t]he juvenile is sixteen or seventeen years old and the alleged offense is" an enumerated crime. RCW 13.04.030(1)(e)(v)(A)-(E). The statutory automatic transfer is an exception to the normal decline procedures and does not require or permit a decline hearing. See RCW 13.40.110 (explaining normal decline hearing process); Boot, 130 Wash.2d at 557, 925 P.2d 964 (interpreting what is now RCW 13.04.030(1)(e)(v)(A) and (B)). Therefore, if the statute applies to a defendant, the juvenile court does not have discretion to assign juvenile court jurisdiction and the defendant cannot be prejudiced based on loss of juvenile court jurisdiction.
The two elements in RCW 13.04.030(1)(e)(v) that trigger automatic decline are (1) the age of the offender and (2) the nature of the offense. Here, the nature of the offense clearly falls within the statute because Salavea was charged with first degree rape of a child.[3] RCW *129 13.04.030(1)(e)(v)(C). However, Salavea and amicus argue that the age element was not met because the age at the time of commission of the crime, rather than the age at the time of proceedings, is controlling. Based on this interpretation, Salavea concludes that the statute does not apply to him because he was only 13-15 years of age when he committed the crimes.
In light of previous case law, the clear wording of the statute, and legislative intent we disagree with Salavea and find the age of the individual at the time of the proceedings is the controlling age. Although the offenses occurred when Salavea was ages 13-15, the earliest the State could charge and try Salavea was after he was 16. Therefore, the age prerequisite is satisfied, the court did not have discretion to assign juvenile court jurisdiction, and Salavea fails to prove prejudice.

a. Case Law
Washington precedent supports the premise that absent intentional or negligent prosecutorial delay, "jurisdiction over offenses committed by a juvenile is to be determined at the time proceedings are instituted against the offender." Calderon, 102 Wash.2d at 351-52, 684 P.2d 1293; Sweet v. Porter, 75 Wash.2d 869, 870, 454 P.2d 219 (1969) (stating that determination of jurisdiction is based on the date of trial, not the date of the arrest, information, or plea); State v. Setala, 13 Wash.App. 604, 606-07, 536 P.2d 176 (1975); State v. Bushnell, 38 Wash.App. 809, 811, 690 P.2d 601 (1984). In Calderon the court was not applying the automatic decline statute. However, like Salavea, the defendant argued that jurisdiction should be based on the age at commission of the crime, not the age when proceedings were instituted. The court rejected the argument and held that juvenile court jurisdiction ends when a defendant becomes 18 unless jurisdiction has been extended by law. Calderon, 102 Wash.2d at 349, 684 P.2d 1293; see also id. at 350-52, 684 P.2d 1293 (discussing and upholding State v. Ring, 54 Wash.2d 250, 339 P.2d 461 (1959), and State v. Kramer, 72 Wash.2d 904, 435 P.2d 970 (1967)).[4] Therefore, it is clear that Calderon and its progeny support reading the age element in RCW 13.04.030(1)(e)(v) as age of the defendant at the time of the proceedings, regardless of age at commission of the crime.

b. Statutory Construction
When a statute is clear on its face and unambiguous, the court does not have to engage in an interpretation of the language. State v. Q.D., 102 Wash.2d 19, 29, 685 P.2d 557 (1984). Statutory inquiry ends with the plain language of the statute and the court assumes the legislature "`means exactly what it says.'" State v. Delgado, 148 Wash.2d 723, 727-28, 63 P.3d 792 (2003) (quoting Davis v. Dep't of Licensing, 137 Wash.2d 957, 964, 977 P.2d 554 (1999)) (noting that words and clauses are not added to unambiguous statutes and criminal statutes are interpreted in a literal and strict manner). In Boot the court found RCW 13.04.030(1)(e)(v)(A) and (B) unambiguous and concluded that "[t]he legislature set up `exclusive original jurisdiction' in adult court over juveniles 16 or 17 years of age who committed the enumerated violent offenses." 130 Wash.2d at 565, 925 P.2d 964.[5] Although Salavea's crimes come under subsection (C) of the statute, the same age prerequisite applicable to subsections (A) and (B) is applicable to subsection (C). Therefore, the court's conclusion clearly finding the statute unambiguous is applicable to this case.[6]
*130 Salavea and amicus argue that the statute may be ambiguous, or conversely is unambiguous but should be interpreted to mean age at commission of the crime. Part of this analysis is based on Salavea's interpretation of the court's language in Boot. Salavea argues that the court's use of "commit" and "committed," in reference to application of the automatic decline statute, reflects the court's desire to interpret the age element as age at the time of commission. See Boot, 130 Wash.2d at 563, 573, 925 P.2d 964 (using "commit"), 560-61, 565, 925 P.2d 964 (using "committed").[7] However, Boot cites Calderon and specifically upholds determination of jurisdiction based on the age of the defendant at the time of the proceedings. Id. at 575, 925 P.2d 964. Therefore, regardless of how the court used "commit" in its opinion, it is clear that Boot did not hold the age element in RCW 13.04.030(1)(e)(v) refers to age at the time of commission of the crime.[8]
Moreover, if the legislature wanted the age element in RCW 13.04.030(1)(e)(v) to refer to age at the time of commission, it could have used language indicating this. As we have previously held, the court "cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language."[9]Delgado, 148 Wash.2d at 727, 63 P.3d 792. We reaffirm Boot and Calderon, and find the statute unambiguously refers to age at the time of the proceedings.

c. Legislative Intent
Additionally, our reading of the statute upholds the intent of the legislature in enacting the automatic decline provision. The legislature wanted to address the problem of youth violence "by increasing the severity and certainty of punishment for youth who commit violent acts" as opposed to "youthful offenders who commit other crimes." State v. Mora, 138 Wash.2d 43, 50, 54, 977 P.2d 564 (1999) (focusing on the seriousness of the offense); see Boot, 130 Wash.2d at 562-63, 566, 925 P.2d 964 (listing the six purposes of the bill enacting the automatic decline provision and citing Laws of 1994, 1st Spec. Sess., ch. 7, § 101). Automatically declining juveniles who commit certain offenses and are tried when they are 16 or 17 years of age properly would serve the intent of the legislature.
Salavea and amicus argue that adopting the State's interpretation would result in an absurd result. They fear that a juvenile who commits an enumerated offense at age 9, but is not prosecuted until age 16, will not receive a decline hearing. However, a juvenile who commits an offense at age 14 and is prosecuted at age 15 will receive a decline hearing. This interpretation leads to an unjust result because it may allow the prosecution to circumvent the juvenile justice system. Further, it seems that a 9 year old is less culpable (e.g., has less capacity to commit a crime) than a 14 year old and should therefore be more deserving of a decline hearing. State v. Vela, 100 Wash.2d 636, 641, 673 P.2d 185 (1983) (explaining that statutes "should receive a sensible construction to effect the legislative intent and, if *131 possible, to avoid unjust and absurd consequences"); see also Q.D., 102 Wash.2d at 22-23, 685 P.2d 557. However, this result can be avoided if the 16 year old can prove prosecutorial delay. Because defendants have the option of avoiding the unjust result by proving prosecutorial delay, our reading does not produce an absurd result.
In conclusion, we construe the age element in RCW 13.04.030(1)(e)(v) to refer to age at the time of the proceedings. Previous case law, the clear language of the statute, and legislative intent provide strong grounds for this interpretation. In light of this conclusion, we find Salavea fails to prove loss of juvenile court jurisdiction. Salavea was 16 at the earliest charging and trial date. Based on his age and the nature of the crime, RCW 13.04.030(1)(e)(v)(C) would have mandated that Salavea be tried in adult court. Therefore, any subsequent delay in charging did not cause Salavea to lose juvenile court jurisdiction because he was never entitled to juvenile court jurisdiction.

B. Prongs Two and Three: State's Reasons and Balancing Test
We need consider the State's reasons for delay only if Salavea proves prosecutorial delay prejudiced his defense. See Norby, 122 Wash.2d at 264, 858 P.2d 210 (stating that a defendant must show that he was prejudiced by the delay in order to prevail); Lovasco, 431 U.S. at 790, 97 S.Ct. 2044 (explaining that generally proof of prejudice is a necessary element of a due process claim). Salavea bases his prejudice argument on loss of juvenile court jurisdiction. In light of our interpretation of RCW 13.04.030(1)(e)(v), Salavea had to be less than 16 years old at the time of proceedings to be entitled to juvenile court jurisdiction. Therefore, although we find that Salavea did not prove he was prejudiced, we discuss the State's reasons for delay to the extent that these reasons show the earliest charging and trial date was after Salavea turned 16 years old.
Absent extraordinary circumstances, a juvenile's case is managed in the same manner as all other cases and does not receive special treatment even if the juvenile is about to turn 18. Calderon, 102 Wash.2d at 354, 684 P.2d 1293. The State has broad discretion to decide when to prosecute and may delay prosecution until it feels it can establish guilt beyond a reasonable doubt. State v. Lidge, 111 Wash.2d 845, 850, 765 P.2d 1292 (1989); see also Lovasco, 431 U.S. at 795, 97 S.Ct. 2044. Broad discretion is allowed because the court does not want the State to mistakenly charge an innocent person or bring cases that are insubstantial and result in a waste of judicial resources. Lidge, 111 Wash.2d at 850, 765 P.2d 1292.
Encompassed in prosecutorial discretion is the need for the prosecution to undertake an investigation. An investigation may not occur until the charges are reported, but once reported a court should evaluate the investigation for deliberate or negligent delay. See Warner, 125 Wash.2d at 890-91, 889 P.2d 479 (noting that a reason for delay may be a delay in reporting). However, if an investigation follows standard practices, the delay caused is considered a justified investigatory delay and rebuts accusations of deliberate or negligent inaction. Calderon, 102 Wash.2d at 354, 684 P.2d 1293; Dixon, 114 Wash.2d at 865-66, 792 P.2d 137; Lovasco, 431 U.S. at 795-96, 97 S.Ct. 2044.
Here, the charges were not reported to the police until August 1998. The juvenile court's prosecutor's office received the investigative file on September 29, 1998, child interviews were conducted the following month, and a detective tried to contact Salavea through the end of November. Therefore, the delay between the time the acts were committed and December 1998 may be justified by a delay in reporting, an investigatory delay, and the right of the prosecution to exercise discretion in filing charges.
Salavea turned 16 on October 9, 1998. The earliest the State could have charged and tried Salavea is after the justified investigatory delay at the end of November 1998. This means that Salavea would have been 16 at the time of the proceedings, the automatic decline statute would have applied to him, and he would have been automatically declined to adult court jurisdiction. Therefore, any argument that Salavea was prejudiced by a loss of juvenile court jurisdiction fails *132 because he was never entitled to juvenile court jurisdiction. In light of this conclusion, we need not consider the rest of Salavea's delay arguments or prong three of the prosecutorial delay test.

CONCLUSION
We interpret the age element of RCW 13.04.030(1)(e)(v) as age at the time of proceedings. Previous case law, the plain language of the statute, and the legislative intent support this reading. Absent prosecutorial delay, if a defendant commits an enumerated act when he/she is less than 16 years of age but is not charged and tried until after he/she is 16, then the defendant must be automatically declined under RCW 13.04.030(1)(e)(v). In light of our interpretation of RCW 13.04.030, Salavea fails to show that he would not have been automatically declined. Salavea was 16 after the justified investigatory delay and the automatic decline statute mandated he be tried in adult court. Therefore, any subsequent prosecutorial delay did not cause a loss of juvenile court jurisdiction, and prejudice his defense, because he was never entitled to juvenile court jurisdiction.
We affirm the Court of Appeals.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS and FAIRHURST, JJ.
NOTES
[1] Salavea does not argue that Washington's due process protections should be greater than the federal protection provided. Therefore, we need not discuss a separate due process analysis under the state constitution.
[2] It should be noted that when we refer to juvenile court jurisdiction we do not mean the juvenile court is a separate constitutional court. Rather, as we have previously held in State v. Werner, 129 Wash.2d 485, 918 P.2d 916 (1996), we recognize the juvenile court is only a division of the superior court given statutory authority to adjudicate "`a phase of the business of the superior court.'" Id. at 492-93, 918 P.2d 916 (quoting Dillenburg v. Maxwell, 70 Wash.2d 331, 352, 413 P.2d 940, 422 P.2d 783 (1967)).
[3] Salavea was also charged with child molestation. It is appropriate that if any charges come under exclusive adult court jurisdiction (here child rape), all related charges fall under adult court jurisdiction. See Boot, 130 Wash.2d at 575, 925 P.2d 964 (noting that once a juvenile is under adult court jurisdiction, juvenile jurisdiction is lost).
[4] Generally "[w]hen a juvenile cause is pending and not heard on its merits prior to the time the juvenile reaches 18 years of age, the juvenile court loses jurisdiction over the cause." Kramer, 72 Wash.2d at 907, 435 P.2d 970.
[5] Boot interpreted RCW 13.04.030(1)(e)(iv), which is a former version of what is currently RCW 13.04.030(1)(e)(v)(A) and (B). This version uses the exact same language for the age prerequisite as the current statute. Boot, 130 Wash.2d at 561-62, 925 P.2d 964.
[6] Although the issue in Boot did not involve the age element of the statute, the court did not exclude the age element from its decision that the statute was unambiguous. Boot, 130 Wash.2d at 565, 925 P.2d 964; see also id. at 558, 571, 925 P.2d 964 (stating the issues of the case and later noting that both defendants were 16 at commission of the crimes).
[7] See also State v. Mora, 138 Wash.2d 43, 49 n. 2, 977 P.2d 564 (1999) (stating that the adult court has exclusive jurisdiction when a 16-17 year old commits a certain crime). However, Mora involved only the offense element of the statute; the age element was not an issue in the case. Id. at 46 n. 1, 48, 977 P.2d 564 (stating that the issue is amendment of charges and establishing defendant's age as 17 at time of offense).
[8] Although some appellate courts agree with Salavea's interpretation and conclusion regarding the language in Boot, we disagree with those courts. See State v. Stackhouse, 88 Wash.App. 963, 968-69, 947 P.2d 777 (1997) (citing Boot and interpreting the statute to require defendant to be 16 or 17 at the commission of the offense); State v. Gilmer, 96 Wash.App. 875, 882, 981 P.2d 902 (1999) (same).
[9] The court has interpreted some statutes that do not say "committed by a child of X age" to mean the age of the child at commission of the crime, but the court is not required to do so. See Q.D., 102 Wash.2d at 21-22, 685 P.2d 557 (interpreting Washington's capacity statute to mean age at the time of commission). Amicus also argues that other states with automatic decline statutes focus on age at the time of commission of the crime. Amicus Curiae Br. of the Wash. Ass'n of Criminal Def. Lawyers at 16-20. Although these states have chosen to focus on the age at the time of commission, other state statutes are merely persuasive authority, not binding authority.